**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 27 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff-Appellee,<br><br> v.<br><br>BASAALY SAEED MOALIN, AKA Basal, AKA Muse Shekhnor Roble,<br><br>   Defendant-Appellant. | No. 13-50572<br><br>D.C. No. 3:10-cr-04246-JM-1<br>Southern District of California,<br>San Diego<br><br>ORDER |
| UNITED STATES OF AMERICA,<br><br>   Plaintiff-Appellee,<br><br> v.<br><br>MOHAMED MOHAMED MOHAMUD, AKA Mohamed Khadar, AKA Sheikh Mohamed,<br><br>   Defendant-Appellant. | No. 13-50578<br><br>D.C. No. 3:10-cr-04246-JM-2 |
| UNITED STATES OF AMERICA,<br><br>   Plaintiff-Appellee,<br><br> v.<br><br>ISSA DOREH, AKA Sheikh Issa,<br><br>   Defendant-Appellant. | No. 13-50580<br><br>D.C. No. 3:10-cr-04246-JM-3 |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50051 |
| Plaintiff-Appellee, | D.C. No. 3:10-cr-04246-JM-4 |
| v. | |
| AHMED NASIR TAALIL MOHAMUD, | |
| Defendant-Appellant. | |

Before: BERZON and NGUYEN, Circuit Judges, and ZOUHARY,[*] District Judge.

The panel has unanimously voted to deny the petitions for rehearing. Judge Nguyen has voted to deny the petitions for rehearing en banc. Judge Berzon and Judge Zouhary recommend denial of the petitions for rehearing en banc. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 40. The petitions for rehearing are denied; the petitions for rehearing en banc are rejected.

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

*United States v. Basaaly Saeed Moalin, et al.*, No. 13-50572

Zouhary, J., Statement:

I agree with the decision to deny the petitions for rehearing. I write separately to provide some context on the notice issue.

**Section 3504**

The government argues 18 U.S.C. § 3504, which allows a defendant to challenge evidence allegedly obtained through unlawful surveillance, provides the proper framework for Appellants to challenge the surveillance evidence in this case. The government points out that "the [P]anel did not cite or address" § 3504. There are two reasons for this. First, a defendant cannot use § 3504 to challenge surveillance if they have no notice of surveillance in the first place. *See, e.g.*, *FBI v. Fazaga*, 595 U.S. 344, 356 (2022) ("[I]ndividuals affected by FISA surveillance are very often unaware of the surveillance unless it is revealed by the [g]overnment."). But here, Appellants received notice. *United States v. Moalin*, 973 F.3d 977, 998 (9th Cir. 2020) ("After defendants were indicted, the government notified them and the district court that it intended to 'use or disclose' in 'proceedings in this case information obtained or derived from electronic surveillance conducted pursuant to the authority of [FISA].'") (citing 50 U.S.C. § 1806(c)). Second, our Opinion examined whether Appellants were entitled to notice *under the Fourth Amendment* -- not what Appellants *should have done* after receiving that notice (i.e.,

exercise their rights under § 3504). *See id.* at 999 (discussing notice obligations under *Dalia v. United States*, 441 U.S. 238 (1979) and 18 U.S.C. § 2518(8)(d)).

### National Security

The government also contends that our conclusion on notice will deter cooperation between intelligence agencies and harm national security. There are two problems with this argument. The government assumes our holding requires *disclosure* of sensitive information. As detailed below, the Opinion does no such thing -- *notice* that surveillance took place is all that is required. *See Moalin*, 973 F.3d at 1001 (noting that "notice is distinct from disclosure."). Further, as Appellants point out in their opposition, the government has been providing analogous notice under FISA for decades and there is no evidence of a deterrent effect or harm to national security.

### Fourth Amendment Notice

Finally, the government challenges our discussion of notice under the Fourth Amendment, arguing this portion of the Opinion is "broad dicta" that runs contrary to congressional intent.

The government asserts that we improperly rely on FISA legislative history that concerned only notice requirements for the execution of search warrants, and that Congress deliberately omitted any notice requirements when the surveillance targets foreigners abroad. As to FISA's legislative history, the government misstates

2

the quoted Senate Report. The Report did not deal with surveillance connected to a warrant. *Moalin*, 973 F.3d at 1000. But even if the government were correct in its depiction of congressional intent, it makes no difference. This portion of the Opinion, which addressed arguments raised by Appellants, examined what is required by the Fourth Amendment, not FISA. And, more importantly, the Fourth Amendment's applicability is not conditioned on whether there is a warrant or any statutory protection. We state:

> This constitutional notice requirement applies to surveillance conducted under FISA and the [FISA Amendments Act], which codify the requirement. . . . Where statutory protections are lacking, the Fourth Amendment's reasonableness requirement takes on importance as a limit on executive power, and notice is necessary so that criminal defendants may challenge surveillance as inconsistent with that requirement.

*Id.* at 1000–01.

The government also ignores Appellants' status, arguing the panel "extend[ed] Fourth Amendment rights to cover the government's foreign intelligence activities overseas." At the time of the surveillance, each of the Appellants had either U.S. citizenship or lawful status. *Moalin*, 973 F.3d at 985 n.2 ("Moalin and Doreh are U.S. citizens, M. Mohamud has refugee status, and Nasir Mohamud has a visa."). Even if the surveillance initially targeted only Al-Shabaab members abroad, the Appellants, all lawfully residing in the U.S., became targets at some point. *See id.* at 999 ("For our purposes, the essential insight of *Cavanagh* is

3

that even if the Fourth Amendment applies differently in the foreign intelligence context, it still *applies*, at least as U.S. persons are involved.") (citing *United States v. Cavanagh*, 807 F.2d 787, 790 (9th Cir. 1972)).

The government next argues "[t]he notice rule invented by the [P]anel in this case has no legal basis and has been rejected by at least three other courts." In support, the government cites a single appellate case, *United States v. Muhtorov*, 20 F.4th 558 (10th Cir. 2021). There, defendant, a lawful permanent resident, received government attention resulting from warrantless § 702 FISA surveillance targeting foreigners abroad. *Id.* at 581. The government used communications obtained through the warrantless surveillance to support further surveillance applications. *Id.* This led to a collection of incriminating statements and the FBI arresting defendant at an airport with cash and other incriminating items. *Id.* But unlike *Moalin*, the government in that case "filed notice that it had used Section 702 to develop evidence against [him]." *Id.* at 590.

The government asserts that *Muhtorov* "rejected" a notice requirement. But the opinions don't conflict. *Muhtorov* concerned, in part, the government's discovery obligations and whether defendant was entitled to *disclosure of* the government's "novel surveillance techniques." 20 F.4th at 632. Our Opinion addressed notice -- not disclosure of techniques -- stating:

> We emphasize that notice is distinct from disclosure. Given the need for secrecy in the foreign intelligence context, the government is

4

> required only to inform the defendant that surveillance occurred and that the government intends to use information obtained or derived from it. . . . If the government avers that disclosure of information relating to the surveillance would harm national security, then the court can review the materials bearing on its legality *in camera* and *ex parte*.

*Moalin*, 973 F.3d at 1001. Additionally, defendant in *Muhtorov* sought disclosure of surveillance techniques under FISA and the Due Process Clause -- not the Fourth Amendment. 20 F.4th at 630–31.

Though our Fourth Amendment notice ruling may not have been "necessary to decide the case," there are critical reasons for making it. Executive Orders, like EO 12,333, remain outside the scope of FISA and the FAA, and contain no notice requirement. *Moalin*, 973 F.3d at 999. Again, without any statutory protections, "the Fourth Amendment's reasonableness requirement takes on importance as a limit on executive power, and notice is necessary so that criminal defendants may challenge surveillance as inconsistent with that requirement." *Id.* at 1001. It is for these reasons, the panel struck a balance between the need for secrecy in national-security investigations and a defendant's right to challenge evidence.

5